UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERYN GREGSON,

          Plaintiff,

v.                                     Case No.: 3:24-cv-00254-TJC-SJH

PGA TOUR, INC.,

          Defendant.

_____/

## DEFENDANT PGA TOUR, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, PGA TOUR, Inc. ("PGA TOUR"), by counsel, submits the following Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. There is no genuine issue as to any material fact, and PGA TOUR is entitled to judgment as a matter of law for the following reasons as set forth more fully in the accompanying Memorandum of Law.

1. Plaintiff, Teryn Gregson ("Plaintiff"), a Christian former PGA TOUR employee who decided not to become vaccinated during the COVID-19 pandemic, filed the instant Complaint seeking to state claims for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), after her employment was terminated due to her repeated refusals to comply with health and safety protocols designed to provide a safe workplace during the pandemic with which other Christians complied. Plaintiff nevertheless claims that: (a) PGA TOUR failed to accommodate her religious beliefs and subjected her to disparate treatment

because she is a Christian (Count I);[1] and (b) PGA TOUR retaliated against her for seeking religious accommodations by refusing to allow her to work from home full time and instead terminated her employment. (Count II).

2.      This Court should dismiss Plaintiff's failure-to-accommodate claim (Count I), because she cannot establish a *prima facie* case. Specifically, Plaintiff cannot show that she had a bona fide religious belief that conflicted with PGA TOUR's health and safety protocols that resulted in her termination. Even if Plaintiff could establish a *prima facie* case, her failure-to-accommodate claim must still fail because PGA TOUR provided her with many reasonable accommodations which she refused, she was not entitled to her preferred accommodations, and her preferred accommodations would have caused an undue hardship.

3.      This Court should dismiss Plaintiff's disparate-treatment claims (Count I), because she has no direct evidence of discrimination, and she cannot establish either *a prima facie* case of discrimination, or that PGA TOUR's legitimate, nondiscriminatory reasons for any adverse employment action were pretext for religious discrimination. Plaintiff also cannot establish a convincing mosaic of circumstantial evidence of religious discrimination sufficient to defeat PGA TOUR's Motion for Summary Judgment.

4.      This Court should dismiss Plaintiff's retaliation claim (Count II), because

---

[1] Plaintiff inappropriately sought to state two distinct legal claims in Count I for failure to accommodate and disparate treatment. *See Garvey v. Sec'y, United States Dep't of Lab.*, No. 8:22-CV-2309-WFJ-AEP, 2023 WL 3057474, at *3 (M.D. Fla. Apr. 24, 2023) (citations omitted) (each distinct legal claim or legal theory requires a separate count).

she cannot establish a *prima facie* case, as she cannot show a causal relationship between any protected activity and any adverse employment action. Even if Plaintiff could establish a causal connection, her retaliation claim must still fail because she cannot show that PGA TOUR's legitimate, nondiscriminatory reasons for any adverse employment action were pretext for retaliation.

WHEREFORE, PGA TOUR respectfully requests that the Court grant this Motion for Summary Judgment and dismiss all of Plaintiff's claims with prejudice.

## MEMORANDUM OF LAW

PGA TOUR submits the following Memorandum of Law pursuant to Local Rule 3.01(a).

## I.    INTRODUCTION

PGA TOUR never required Plaintiff or any other employee to get a COVID-19 vaccine. Rather, PGA TOUR implemented health and safety protocols for the workplace, including certain protocols for unvaccinated employees, in accordance with OSHA and CDC guidance established at the time. PGA TOUR offered Plaintiff numerous accommodations during an extensive interactive process seeking to enable her to comply with the health and safety protocols in accordance with her alleged religious beliefs as detailed below. Plaintiff repeatedly refused to accept PGA TOUR's proposed accommodations, and repeatedly refused to comply with the health and safety protocols enacted to provide a safe workplace for all employees. As a result, PGA TOUR terminated Plaintiff's employment on November 12, 2021.

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

   a) PGA TOUR'S Mission, EEO Policy, and Health and Safety Protocols During the COVID-19 Pandemic

PGA TOUR is a tax exempt membership organization of professional golfers that sanctions and promotes professional golf tournaments. PGA TOUR has also raised more than four billion dollars for charitable causes to date. PGA TOUR's Equal Employment Opportunity Policy strictly prohibits discrimination on the basis of religion and all other categories protected by law, and also strictly prohibits retaliation against employees for engaging in protected activity. Corse Dec. ¶ 3; [2] Pl. Dep. Ex. 45.

Prior to the pandemic, all employees based in Northeast Florida not performing services at PGA TOUR events were required to work from various PGA TOUR offices including the PGATE facility in St. Augustine, Florida. During the pandemic, PGA TOUR, like many employers, required employees to work remotely in an effort to mitigate transmission of COVID-19. Corse Dec. ¶ 4.  PGA TOUR always intended the remote work environment to be temporary with the goal of a full return to the workplace as soon as it was safe to do so. Corse Dec. ¶ 4. During the pandemic, before a vaccine had been developed and was available to residents in the United States, PGA TOUR continually monitored COVID-19 guidance from local, state, and federal authorities, stayed apprised of COVID-19 levels, and consulted with medical advisors

___

[2] Unless otherwise noted, all citations to record evidence refer to deposition transcripts and exhibits, and supporting declarations filed in support of this Motion for Summary Judgment.

4

in an effort to ensure a safe return to the workplace. PGA TOUR repeatedly delayed the date of the mandatory return to the workplace because of safety concerns based on this information: from June 1, 2021 to September 1, 2021, to October 1, 2021, and finally to November 1, 2021. Corse Dec. ¶ 5.

Determining the vaccination status of employees was important for a safe return to the workplace. Corse Dec. ¶ 6. Therefore, on August 6, 2021, Talent & Culture (PGA TOUR's Human Resources Department) asked vaccinated employees to upload proof of vaccination to a secure third-party website, Healthy Roster. Pl.'s Dep. Ex. 68. PGA TOUR asked employees who were not fully vaccinated to complete a survey indicating whether they intended to become fully vaccinated. Pl.'s Dep. Ex. 68. Employees who did not intend to become fully vaccinated, or did not wish to disclose their vaccination status, were asked if they would like to seek a medical or religious exemption from paying supplemental health insurance premiums that applied to all other employees who did not provide proof of full vaccination. Pl.'s Dep. Ex. 5; Corse Dec. ¶ 6.

PGA TOUR never implemented a COVID-19 vaccine mandate and never disciplined or terminated any employee for refusing to be vaccinated. Corse Dec. 7. Instead, upon the mandatory return to the workplace in November of 2021, all employees, regardless of vaccination status, were required to conduct a daily self-screening for COVID-19 symptoms before entering the workplace and, at various times, were required to mask depending on varying COVID-19 levels. Pl.'s Dep. Ex. 24; Corse Dec ¶ 7.

Further, to provide a safe workplace PGA TOUR required all employees who were not fully vaccinated and could not perform their jobs fully remotely based on their job requirements as determine by the PGA TOUR, to comply with additional health and safety protocols primarily masking indoors, and weekly COVID-19 testing and reporting of results to a secure third party website, Healthy Roster. Pl.'s Dep. Ex. 15 (10/15/2021 at 12:48 PM). PGA TOUR's health and safety protocols, including those for employees who were not fully vaccinated, were based on guidance from the medical experts including from the CDC. Pl.'s Dep. Ex. 15 (10/15/2021 at 12:48 PM). PGA TOUR handled requested accommodations from the health and safety protocols on an individualized basis. Corse Dec. ¶ 8.

On July 16, 2021 – more than three months prior to the mandatory return to work date on November 1, 2021 – PGA TOUR notified Plaintiff and all other employees that refusal to follow the safety protocols may result in termination of employment. Pl. Dep. Ex. 64. When PGA TOUR required a full return to the workplace on November 1, 2021, each manager determined what amount of remote work, if any, could be allowed for their respective employees based on their job requirements. Corse Dec. ¶ 9.

**b) Plaintiff's Employment with PGA TOUR.**

PGA TOUR hired Plaintiff on May 9, 2016 as an On-Air Talent/Producer for PGA TOUR Entertainment ("PGATE") on the Digital Content Team. During this time, PGATE was PGA TOUR's in-house media division located in St. Augustine, Florida. PGATE's St. Augustine workplace was a state of the art production facility

6

that consisted of a 35,000 square foot building that housed PGA TOUR's production teams along with editing rooms, a studio, control rooms, graphics suites, and audio and mixing suites. Riceman Dec. ¶ 3.

The On-Air Talent side of Plaintiff's job required her travel to tournaments to serve as an on-site reporter where she interviewed players and filmed content for PGA TOUR. Riceman Dec. ¶ 4. Plaintiff also produced and hosted two shows for distribution on PGA TOUR's website and social media channels—The Takeaway and The Good, Bad & Unusual. The Takeaway was a daily highlight show lasting approximately two and a half minutes. Riceman Dec. ¶ 4. The Good, Bad & Unusual was a slightly longer weekly show recapping the prior week's tournament. Prior to the pandemic, Plaintiff performed her day-to-day duties either at the PGATE broadcast studio or on-site at PGA TOUR events. Pl. Dep. 13. Plaintiff did not work remotely prior to the pandemic. Pl. Dep. Ex. 56; Riceman Dec. ¶ 4.

Rather, prior to the COVID-19 pandemic, Plaintiff and her production team worked collaboratively in the same office space at PGATE where they would watch golf and pull clips together for her shows. Riceman Dec. ¶ 5. After pulling the clips, Plaintiff would write the script for her shows, which her supervisor Jason Boddy, Lead Digital and Social Video Content, would review and approve. Riceman ¶ 5. Next, Plaintiff and her team would film her shows in PGATE's studio *Id.* The studio consisted of a live set, a green screen, professional cameras, controlled lighting, microphones, and a control room. Boddy Dep. 26; Riceman Dec. ¶ 5. When filming in the studio, Plaintiff and her team made good use of the green screen, lighting,

7

camera equipment, and microphones. Boddy Dep. 16; Riceman Dec. ¶ 5. After filming wrapped up, Plaintiff and Mr. Boddy would return to the shared office space where they edited the content and posted the content on PGA TOUR's website and social media channels. Boddy Dep. 12-14; Riceman Dec. ¶ 5.

PGA TOUR's transition to remote work during the pandemic was consistent with practices implemented by other professional sports leagues at the time. Corse Dec. ¶ 10. PGA TOUR also suspended tournament play from March 2020 until the end of May/early June 2020. Corse Dec. ¶ 10. During this time Plaintiff's two shows went on a brief hiatus, and Plaintiff's travel to tournaments ceased. Corse Dec. ¶ 10. Once tournament play resumed, PGA TOUR implemented COVID-19 safety protocols at tournaments which impacted players, vendors, media partners, and employees alike. Corse Dec. ¶ 10. PGA TOUR developed these safety protocols which included regular COVID-19 testing, reporting and masking based on CDC guidance and consultation with medical advisers. Corse Dec. ¶ 10.

When Plaintiff travelled to tournaments, she was subject to and complied with PGA TOUR's COVID-19 safety protocols, including testing for COVID-19 and masking. Pl. Dep. 42; Pl. Dep. Ex. 66; Corse Dec. 10. Plaintiff also complied with federal aviation regulations requiring masking when traveling for work and personal reasons during this period. Pl. Dep.143, 200. Corse Dec. ¶ 10 These federal aviation regulations did not contain any exception for travelers with religious objections to masking. Pl. Dep. 144.

8

When Plaintiff's shows resumed after PGA TOUR reinstated tournament play, she filmed the content remotely from her home using a makeshift studio in a guest bedroom consisting of a small camera, ring light, and a pop-up green screen. Boddy Dep. 27-28; Riceman Dec. ¶ 6. This virtual production process necessitated by the pandemic was slower, disjointed, and much less collaborative than the in-person production process at PGATE. Boddy Dep. 24-26; Riceman Dec. ¶ 6. Prior to the pandemic when Plaintiff's team was all together in the same room, team members could simply speak to each other in person. Riceman Dec. ¶ 6. Boddy Dep. 24-25. The only time the team was required to communicate electronically (e.g. Skype or Microsoft TEAMS) during production of Plaintiff's shows was when Plaintiff was occasionally at PGA TOUR events. Riceman Dec. ¶ 6.

During the COVID-19 pandemic when Plaintiff and her team were required to work remotely all communication became electronic. Boddy Dep. 25-26; Riceman Dec. ¶ 6. This remote set up was far from ideal, as the set up negatively impacted the quality of the content that Plaintiff and her team were able to produce because of the lack of professional equipment, the lack of a controlled environment, and the decreased ability of the team to collaborate on the content, but it was the best that could be done given time the circumstances as the time. Boddy Dep. 24-26; Riceman Dec. ¶ 6. Therefore, after concluding that the high percentage of employee vaccinations along with the mandatory health and safety protocols allowed for a safe return to the workplace, PGA TOUR required Plaintiff and all of her team to return

9

to work at the PGATE facility on November 1, 2021. Riceman Dec. ¶7; Corse Dec. ¶ 5.

### c) **Plaintiff's Religious Accommodation Requests From PGA Tour's Safety Protocols.**

On September 9, 2021, Plaintiff notified PGA TOUR that she did not intend to become vaccinated and submitted a religious exemption request from the increased insurance premiums bourne by all other unvaccinated employees claiming that all COVID-19 vaccinations violated her religious beliefs. Talent & Culture approved Plaintiff's exemption request on October 15, 2021. Pl. Dep. Ex. 6, 14. However, Plaintiff's religious exemption from the increased insurance premiums did not exempt her from compliance with the mandatory health and safety protocols for employees who did provide proof of full vaccination. Pl. Dep. Ex. 12, 14; Corse Dec. ¶ 11.

On October 19, 2021—three months after PGA TOUR informed Plaintiff and all other employees on July 16, 2021 that failure to comply with the mandatory health and safety protocols may result in termination—Plaintiff emailed Talent & Culture claiming for the first time that the mandatory health and safety protocols for employees who did not provide proof of full vaccination also conflicted with her religious beliefs. Pl. Dep. Ex. 15 (10/19/2021 at 8:16 AM). Specifically, Plaintiff requested: (i) to be entirely exempt from the health and safety protocols for unvaccinated employees which included masking, testing, and test reporting, or (ii) in the alternative, to continue to work fully remotely indefinitely. Corse Dec. ¶ 12.

PGA TOUR reviewed Plaintiff's requests but ultimately determined that both would cause an undue hardship. Corse Dec. ¶ 12. Both masking and weekly testing for unvaccinated employees were required under a pending OSHA regulation that PGA TOUR fully expected to become a legal requirement. [3] Corse Dec. ¶ 13. As a result, PGA TOUR denied Plaintiff's request to be exempt from the mandatory health and safety protocols for unvaccinated employees because of the expected need to comply with OSHA regulations along with the need to provide a safe workplace for all employees. Corse Dec. ¶ 13.

PGA TOUR also denied Plaintiff's request to work from home for an indefinite period. [4] Senior Vice President of Talent and Culture, Michelle Corse, reviewed Plaintiff's job description and also discussed Plaintiff's request with the head of Plaintiff's department, Michael Riceman, Vice President of Original and Social Content. Corse Dec. ¶ 14. Mr. Riceman could not accommodate Plaintiff's request to continue working fully remotely because of the necessity to collaborate with her

---

[3] On September 9, 2021, President Biden directed the Department of Labor's Occupational Safety and Health Administration (OSHA) to issue an Emergency Temporary Standard (ETS) requiring all employers with 100 or more employees to ensure their workforce was fully vaccinated or require any workers who remained unvaccinated to produce a negative test result on at least a weekly basis before coming to work. On November 5, 2021, OSHA issued the ETS scheduled to become effective January 4, 2022. COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61402 (November 5, 2021). On Jan. 13, 2022, the U.S. Supreme Court granted an emergency request for relief, staying OSHA's ETS. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 663 (2022). Thus, at the time of Plaintiff's termination on November 12, 2021, PGA TOUR was operating under the assumption that weekly testing and reporting for employees who were not fully vaccinated would be required by OSHA. Corse Dec. ¶ 13.

[4] PGA TOUR's health and safety protocols continued in place for over three months following Plaintiff's termination on November 12, 2021. The federal mask mandate for air travel continued for over five months following Plaintiff's termination. Pl. Dep. Ex. 40. And the CDC did not declare an end to its Public Health Emergency Declaration until May 11, 2023. CDC, *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*,°https://phe.html#:~:text=May%2011%2C%202023%2C%20marks%20the,federal%20COVID%2 D19%20PHE%20declaration.

colleagues in person to perform her job requirements. Corse Dec. ¶ 14. Plaintiff also lacked the state of the art equipment at her home that was available at PGATE, which would also negatively affect production value. Riceman Dec. ¶¶ 5, 6; Boddy Dep. 26. Allowing Plaintiff to work remotely as a producer would also slow the production process. Boddy Dep. 26; Riceman Dec. ¶ 6. Therefore, PGA TOUR found that allowing Plaintiff to work fully remotely would be an undue hardship. Riceman Dec. ¶¶ 5, 6.; Corse Dec. ¶ 14.

Notably, no one on Plaintiff's production team, and no one in Mr. Riceman's department worked fully remotely after PGA TOUR's mandatory return to the workplace on November 1, 2021. Instead, it was Mr. Riceman's department policy for all employees to work from PGATE at least three days per week.[5] Significantly, Mr. Riceman did not allow two other PGATE employees in his department to continue working fully remotely for personal reasons (i.e. not medical or religious reasons) after November 1, 2021, and those employees chose to separate from PGA TOUR as a result. Riceman Dec. ¶ 7.

Ms. Corse informed Plaintiff that PGA TOUR could not accommodate her work from home request on October 22, 2021. P1. Dep. Ex. 19 (10/22/2021 at 1:42 PM). Specifically, Ms. Corse explained:

> "Because we don't know if or when the mitigation measures [masking, testing, and reporting] to reduce the risk of the spread [of COVID-19] can be eliminated, particularly as it appears we will have to learn to work with COVID-19 for the foreseeable future, we simply cannot accommodate

---

[5] After November 1, 2021, Plaintiff's team worked a few extra days remotely due to another production team's need for specific equipment in the PGATE studio. Boddy Dep. ℙ 34-36.

12

your request to work from home, as your position requires you to be in the office to collaborate with your team and other departments, in addition to your onsite duties connected with production." Pl. Dep. Ex. 19. (10/22/2021 at 1:42 PM).

PGA TOUR reiterated its reasoning for denying Plaintiff's work from home in multiple subsequent communications to her. Pl. Dep. Exs. 23, 30.

### d) **PGA TOUR Offered Plaintiff Numerous Reasonable Accommodations so that She Could Continue Her Employment, But She Refused All of The Reasonable Accommodations.**

Though PGA TOUR was unable to fully grant either of Plaintiff's accommodation requests — to be fully exempted from the health and safety protocols or work remotely full time—PGA TOUR engaged in a weeks-long discourse with her, exchanging nearly daily emails, in an effort to find accommodations that would allow her to continue her PGA TOUR employment. Pl. Dep. Exs. 14, 23. Specifically, PGA TOUR offered Plaintiff multiple accommodations as set forth below:

(1)    In Response to Plaintiff's request, PGA TOUR exempted Plaintiff from payment of the supplemental insurance premium that other unvaccinated nonexempt employees had to pay. Pl's Dep. Ex. 14; Corse Dec. ¶ 15.

(2)    In response to Plaintiff's objection to masking in the office, PGA TOUR agreed to find a place for her to work where she could socially distance from other employees and agreed to only require her to wear a mask when she was not socially distancing. Pl.'s Dep. 117; Pl.'s Dep. Ex. 23 (10/28/2021 at 10:58 AM). Corse Dec. ¶ 15.

(3)    In response to Plaintiff's repeated refusals to test for COVID-19 and submit test results, PGA TOUR extended her testing deadline three times without consequence. Pl.'s Dep. 148-149; Pl.'s Dep. Ex. 36 (11/10/2021 at 4:08 PM). Plaintiff missed each deadline. Pl.'s Dep. 148-149. Corse Dec. ¶ 15.

13

(4)    In response to Plaintiff's request to work at home full time, PGA TOUR agreed to allow her to work from home two days per week. Pl.'s Dep. Ex. 23 (10/27/2021 at 6:09 AM and 10/28/2021 at 10:58 AM). Corse Dec. ¶ 15.

(5)    In response to Plaintiff's inquiry about maternity leave, PGA TOUR agreed to provide leave in accordance with the FMLA prior to her termination on November 12, 2021 in order to accommodate her request to work from home for a few more months. Pl. Dep. Ex. 36 (11/10/2021 at 4:08 PM); Corse Dec. ¶ 15.

PGA TOUR reiterated these available accommodations to Plaintiff on multiple occasions over the span of a few weeks. Pl. Dep. Ex. 23 (10/28/2021 at 4:08 PM). Each time, Plaintiff declined PGA TOUR's accommodations, insisting that one of her two requested accommodations – being completely exempted from the health and safety protocols or allowed to work full time from home – be granted instead. Corse Dec. ¶ 16.

### e) PGA TOUR Terminates Plaintiff's Employment Due to Her Repeated Refusals to Comply with the Mandatory Health and Safety Protocols.

On November 3, 2021, PGA TOUR gave Plaintiff two options: (i) accept PGA TOUR's accommodations and comply with the mandatory health and safety protocols for unvaccinated employees, or (ii) separate from PGA TOUR with the option of a voluntary separation package. Corse Dec. ¶ 17. PGA TOUR requested that Plaintiff decide by November 5, 2021, and subsequently extended the decision deadline to November 8, 2021 to provide Plaintiff with time to review a draft separation agreement. Pl. Dep. Ex. 32 (11/3/2021 at 7:25 PM); Corse Dec. ¶ 17.

On November 11, 2021, Plaintiff again informed Ms. Corse that she would not "consent" to the accommodations provided by PGA TOUR, and that she would not comply with the mandatory health and safety protocols for unvaccinated employees. Pl. Dep. Ex. 36. (11/11/2021 at 5:04 PM). Therefore, PGA TOUR terminated Plaintiff's employment on November 12, 2021 for failure to comply with the health and safety protocols. Pl. Dep. 10; Pl. Dep. Ex. 39; Riceman Dec.¶ 8; Corse Dec. ¶ 18.

### f) FCHR's dismissal of Plaintiff's Charge of Discrimination after a Full Evidentiary Hearing.

On December 27, 2021, Plaintiff dual filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Opportunity Employment Commission ("EEOC") claiming religious discrimination. Pl. Dep. Ex 48. After a thorough investigation, the FCHR determined that it was "unlikely that unlawful discrimination occurred" and issued a "No Reasonable Cause" finding, which the EEOC adopted. Pl. Dep. Exs. 51, 52. Plaintiff then filed a Petition for Relief from the FCHR determination prepared by her lawyer. Pl. Dep. Ex. 53.

In her Petition, Plaintiff again claimed religious discrimination. Pl. Dep Ex. 53. Florida's Division of Administrative Hearings ("DOAH") considered the Petition and conducted a full evidentiary hearing on January 30–31, 2023 where Plaintiff was represented by counsel. After considering the evidence, Administrative Law Judge James H. Petersen, III, issued a Recommended Order finding that PGA TOUR did not unlawfully discriminate against Plaintiff because of her religion. Pl. Dep. 174; Pl. Dep. Ex. 57. A panel of three Commissioners from the FCHR adopted the

Recommended Order and dismissed Plaintiff's claims with prejudice on September 29, 2023. Pl. Dep. 175; Pl. Dep. Ex. 58.

## III.    ARGUMENT

### A.    Plaintiff's Failure-to-Accommodate Claim Must Fail.

In Count I of Plaintiff's Complaint, she alleges that PGA TOUR violated Title VII by failing to accommodate her religious beliefs. Religious accommodation claims follow a burden-shifting framework akin to the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case, Plaintiff must present evidence sufficient to prove that: (1) she held a bona fide religious belief that conflicted with an employment requirement; (2) she informed PGA TOUR of that belief; and (3) PGA TOUR terminated her employment for failing to comply with the conflicting employment requirement. *See Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) (citations omitted). If Plaintiff makes out a *prima facie* case, PGA TOUR must still prevail upon establishing either: (1) that it offered Plaintiff any reasonable accommodation, or (2) that the accommodations Plaintiff sought would result in an undue hardship. *See Patterson v. Walgreen Co.*, 727 F. App'x 581, 585–86 (11th Cir. 2018).

Here, Plaintiff's failure-to-accommodate claim necessarily fails, because she cannot establish a *prima facie* case as she did not hold a bona fide religious belief that conflicted with PGA TOUR's health and safety protocols during the COVID-19 pandemic. Even if Plaintiff could establish a *prima facie* case, her claim must still fail,

because PGA TOUR offered her many reasonable accommodations, and her preferred accommodations would have caused an undue hardship.

> **1.     Plaintiff Cannot Establish a *Prima Facie* Case Because She Cannot Show That She Held a Bona Fide Religious Belief that Conflicted with Either the COVID-19 Vaccine[6] or PGA TOUR's Health and Safety Protocols.**

To qualify as a "bona fide" religious belief, the belief must be: (1) religious, and (2) sincerely held. *Telfair v. Fed. Exp. Corp.*, 934 F. Supp. 2d 1368, 1382 (S.D. Fla. 2013), *aff'd*, 567 F. App'x 681 (11th Cir. 2014). Plaintiff's alleged religious objections to COVID-19 vaccination, and PGA TOUR's health and safety protocols were neither.

During Plaintiff's employment with PGA TOUR she was a member of Ponte Vedra Presbyterian Church. Pl. Dep. 18-20. During Plaintiff's deposition testimony she admitted that her Church did not advise her not to become vaccinated, and did not take the position that Covid 19 vaccinations violated its theological principles. Specifically, Plaintiff testified as follows:

Q.    What was your church's stance on the COVID-19 vaccination?

A.    I don't think that they took a stance on the vaccination.

Q.    So would it be fair to say they didn't advise you either way as to whether or not you should be vaccinated?

A.    Correct, they did not.

Q.    Would it also be fair to say that there were no preachings or teachings [by Plaintiff's Church] saying that [COVID-19] vaccination violated their theological or religious principles?

A.    Yes, I would say they didn't take a stance on that.

…

---

[6] Plaintiff does not claim that PGA TOUR terminated her employment for refusing COVID-19 vaccination. Pl. Dep. 60. PGA TOUR raises this issue only to help the Court evaluate the overall validity of Plaintiff's alleged religious beliefs.

Q.    Are you aware of any Presbyterian church that took a stance against COVID-19 vaccinations?

A.    No.

Q.    Are you aware of any Christian church that took any stance against COVID-19 vaccinations?

A.    I can't speak specifically to that, no. I couldn't name any.

Pl. Dep. 20, 38.[7]

Furthermore, Plaintiff repeatedly engaged in conduct that conflicted with her alleged religious objections to masking and testing. Specifically, Plaintiff engaged in the following behavior that was inconsistent with her alleged religious beliefs:

- 3/2/21 – Plaintiff tested for COVID-19 Pl. Dep. Ex. 59.
- 3/7/21 – Plaintiff tested for COVID-19 Pl. Dep. Ex. 60.
- March 2021 – Plaintiff masked and tested for COVID-19 at two PGA TOUR events Pl. Dep. 39-40, 181.
- July 2021 – Plaintiff masked on a flight to Waterloo, IL Pl. Dep. Ex 67.
- August 2021 – Plaintiff masked on a flight to Kansas City, MO.
- August 2021 – Plaintiff masked on a flight to Lake Tahoe, NV. Pl. Dep. Ex. 71.
- September 5, 2021 – Plaintiff masked on a flight to Atlanta, GA for a PGA TOUR event (FedEx Tour Championship) Pl. Dep. 39.

As Plaintiff has not acted consistently with her alleged religious beliefs prohibiting masking and testing, her beliefs cannot be considered sincerely held. *See Hussein v. The Waldorf-Astoria*, 134 F. Supp. 2d 591, 596–97 (S.D.N.Y. 2001), *aff'd sub*

---

[7] Additionally, The Presbyterian Church (USA) actually urged Presbyterians to become vaccinated. https://pcusa.org/news-storytelling/news/2021/9/27/vaccination-and-faithfulness-time pandemic.

*nom. Hussein v. Waldorf Astoria Hotel*, 31 F. App'x 740 (2d Cir. 2002) (granting summary judgment and finding "a reasonable jury could only find that Hussein's religious assertion was not bona fide" because plaintiff acted inconsistently with his stated beliefs.); *Sidelinger v. Harbor Creek Sch. Dist.*, No. CIV 02-62 ERIE, 2006 WL 3455073 at *25-*26 (W.D. Pa. Nov. 29, 2006) (finding plaintiff's religious belief was not sincerely held based on inconsistent prior conduct); *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. CV 19-5734, 2022 WL 507479, at *5 (E.D. Pa. Feb. 18, 2022) (granting summary judgment and finding employee's religious beliefs were not "sincerely held" where "employee has behaved in a manner markedly inconsistent with the professed belief."). Therefore, Plaintiff's failure to accommodate claim must be dismissed, because she cannot establish a *prima facie* case, because she cannot show that she had a bona fide religious belief that conflicted with PGA TOUR's health and safety protocols.

### 2. Plaintiff's Failure to Accommodate Claim Must Fail Because PGA TOUR Offered Her Multiple Reasonable Accommodations that she Refused.

Even if Plaintiff could establish a *prima facie* case, which she cannot, her failure to accommodate claim still must fail, because PGA TOUR offered her multiple reasonable accommodations all of which she refused. Importantly, "any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986); *Patterson*, 727 F. App'x at 586. Employers are not required to "give an employee a choice among several accommodations" or the preferred accommodation. *Beadle v. Hillsborough Cnty. Sheriff's*

*Dep't*, 29 F.3d 589, 592 (11th Cir. 1994).

PGA TOUR provided Plaintiff with many reasonable accommodations as detailed above on Pages 13-14, which more than satisfied PGA TOUR's duty to provide a reasonable accommodation under Title VII. Because PGA TOUR offered Plaintiff reasonable accommodations, the "inquiry ends" "regardless of whether that accommodation is the one which the employee suggested." *See Beadle*, 29 F.3d at 592. Therefore, Plaintiff's failure to accommodate claim must be dismissed. However, should the court wish to consider PGA TOUR's undue hardship defense it is set forth below.

### 3.  <u>Plaintiff's Failure to Accommodate Claim Must Fail Because Her Preferred Accommodations Would Have Resulted in an Undue Hardship.</u>

As detailed above, PGA TOUR accommodated many of Plaintiff's requests but she refused to agree to other accommodations and ultimately demanded: (i) complete non-compliance with the health and safety protocols while working at PGATE, or (ii) alternatively, working from home full time for indefinite period. Both would have resulted in an undue hardship on PGA TOUR's operations. When evaluating PGA TOUR's undue hardship defense this Court must "take into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of the employer." *Groff v. DeJoy*, 600 U.S. 447, 470–71 (2023) (internal quotation marks omitted).

First, permitting Plaintiff not to test at all for COVID-19 would have necessarily resulted in no test results being recorded by PGA TOUR. PGA TOUR needed to

record the test results to conduct contact tracing, track quarantine periods, and comply with potentially imminent federal OSHA requirements. [8] Corse Dec. ¶ 3. As a result, not obtaining test results from Plaintiff, and not recording her test results would have caused an undue hardship by risking the health and safety of her fellow employees. *See Nealis v. PGA TOUR, Inc.*, No. 3:23-CV-623-TJC-MCR, 2025 WL 807443, at \*7 (M.D. Fla. 2025) (PGA TOUR's inability to record test results "would have been an undue hardship as a matter of law (not to mention as a matter of common sense.")).

Second, allowing Plaintiff not to test and not to mask at the workplace when she was not social distancing would risk employee health and safety by increasing the risk of COVID-19 transmission. *See Dang v. DeJoy*, No. 1:22-CV-01426-LMM-JEM, 2024 WL 5397365, at \*11 (N.D. Ga. Nov. 21, 2024), *report and recommendation adopted*, No. 1:22-CV-01426-LMM, 2025 WL 435796 (N.D. Ga. Jan. 3, 2025)  ("[I]n the context of the COVID-19 global pandemic, Defendant met its burden of showing the undue hardship posed to Defendant's operations if it could not thwart the exposure of its employees to the contagious COVID-19 virus. Defendant is not required to accommodate Plaintiff in a way that jeopardizes the health and safety of its other employees."); *Leitgeb v. Sark Wire Corp. - GA*, No. 2:21-CV-259-RWS, 2022 WL 18777380, at \*11 (N.D. Ga. Sept. 21, 2022), *aff'd*, No. 22-13683, 2023 WL 5607882 (11th Cir. Aug. 30, 2023) (explaining that defendant was not required "to prioritize

---

[8] *See* EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Question L.3, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last updated May 15, 2023) ("Courts have found Title VII undue hardship where, for example, the religious accommodation would violate federal law, impair workplace safety, diminish efficiency in other jobs.").

Plaintiff's beliefs over the health and safety of its other employees, especially when it was dealing with a COVID-19 outbreak."); *see also Creger v. United Launch All. LLC*, 571 F. Supp. 3d 1256, 1260–61 (N.D. Ala. 2021) (collecting cases) (denying preliminary injunction because employer's need to ensure a healthy and safe workplace satisfied undue hardship showing to justify vaccine mandate in spite of plaintiffs' religious objections); *see also* EEOC COVID-19 Guidance, Response to Question L.3 (noting that undue hardship may include "the risk of the spread of COVID-19 to other employees").

Third, permitting Plaintiff to work fully remotely for an indefinite period would have also posed an undue hardship on PGA TOUR's operations. As detailed above, PGA TOUR determined that Plaintiff would not be able to fully and efficiently perform her job duties from home due to the in person collaboration requirements—a fact that Plaintiff herself acknowledged in multiple communications. Pl. Dep. Ex. 34 (11/5/2021 at 1:41 PM). *See* EEOC COVID-19 Guidance, Question L.3 ("diminish[ed] efficiency" is an undue hardship); *cf.* Question D.14 ("the fact that the period of telework may be of…unknown duration may [constitute]…undue hardship"); *Groff*, 600 U.S. at 471 ("[T]he EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by the Court's clarifying decision."); *DeVore v. Univ. of Kentucky Bd. of Trs.*, 693 F. Supp. 3d 757, 765–66 (E.D. Ky. 2023), *aff'd*, 118 F.4th 839 (6th Cir. 2024) (finding that it was an undue hardship to allow an employee to work remotely because "a fundamental aspect of the job was to be physically present in the office."). Indeed, due to collaboration requirements, no PGATE employee in

22

Mr. Riceman's department was allowed to work fully remotely.[9] Therefore, Plaintiff's failure-to-accommodate claim must be dismissed because her proposed accommodations would have resulted in an undue hardship for PGA TOUR.

### B. Plaintiff's Disparate-Treatment Claims Must Fail.

In Count I of her Complaint, Plaintiff alleges that PGA TOUR subjected her to disparate treatment by: (i) not allowing her to work from home full time and allowing her teammates to work from home full time after the mandatory return to the office on November 1, 2021,[10] and (ii) not allowing her to work from home as a religious accommodation while allowing employees with medical conditions prohibiting vaccination to work from home. Dkt. 2 ¶¶ 79, 83.

A plaintiff may establish disparate treatment in a religious discrimination case using either direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Where a plaintiff has no direct evidence of discrimination, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the plaintiff starts with the burden of

---

[9] It is of no import that Plaintiff spent the previous 19 months working remotely. The EEOC has made clear that temporary job modifications by an employer during the pandemic, including remote work, may be removed at the employer's discretion. *See* EEOC, COVID-19 Guidance, Question D.15 ("The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship. . . . The employer has no obligation . . . to refrain from restoring all of an employee's essential duties at such time as it chooses to restore the prior work arrangement, and then evaluating any requests for continued or new accommodations under the usual . . . rules.").

[10] This claim must fail because Plaintiff cannot identify any supporting record evidence. Contrastingly, PGA TOUR has submitted undisputed record evidence showing that all employees on Plaintiff's team were required to work at PGATE at least three days a week. Riceman Dec. ¶ 7.

establishing a *prima facie* case. *Id*. Here, Plaintiff has no direct evidence of discrimination.[11]

Therefore, Plaintiff must establish a *prima facie* case under the *McDonnell Douglas* standard to allow her claims to survive. Thereafter, "If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006) (internal citations omitted).

### 1.      Plaintiff cannot establish a prima facie case of religious discrimination.

To establish a *prima facie* case of religious discrimination, Plaintiff must show that she (1): belongs to a protected class; (2) was qualified to do the job; (3) was subjected to an adverse employment action; and (4) that PGA TOUR treated similarly situated employees outside her protected class more favorably. *See Telfair*, 934 F. Supp. 2d at 1378. Plaintiff cannot establish either the third or fourth elements.

Plaintiff cannot establish a *prima facie* case with respect to PGA TOUR's denial of her request to work from home, because PGA TOUR's decision not to allow her to work from home is not an adverse employment action as a matter of law.[12] *See Revere*

---

[11] "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Tomczyk v. Jocks & Jills Restaurants, LLC.,* 198 F. App'x 804, 810 (11th Cir. 2006). Such remarks must "specifically relate to the challenged employment decision." *Kent v. City of Homestead*, 15 Fla. L. Weekly Fed. D206, D209 (S.D. Fla. Mar. 13, 2002). Plaintiff does not allege any such remarks in her Complaint, did not testify to any such remarks during her deposition, and cannot identify any record evidence of such remarks.

[12] Notably, Plaintiff is not claiming that PGA TOUR terminated her employment because she is a Christian. Pl. Dep. 79.

*v. Harvey*, No. 1:06-CV-2485-CAP-RGV, 2009 WL 10666058, at \*11 (N.D. Ga. 2009)*, report and recommendation adopted*, No. 1:06-CV-2485-CAP-RGV, 2009 WL 10669716 (N.D. Ga. 2009) (finding that plaintiff had not established that the denial of her work from home request constituted an adverse employment action.); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 312-13 (S.D.N.Y. 2001) (citations omitted) (claim that human resources vice president discriminated against plaintiff by not allowing him to work from home did not constitute an adverse employment action); *Little v. New York*, No. 96 CV 5132(SJ), 1998 WL 306545, at \*5–6 (E.D.N.Y. June 8, 1998), *aff'd by Little v. State*, No. 98-7979, 1999 WL 220147 (2d Cir. Apr. 14, 1999) ("The realities of the workplace dictate that employees do not always have the option to work in the location they desire.").

Further, Plaintiff cannot establish a *prima facie* case because she cannot identify any similarly situated employee outside her protected class whom PGA TOUR treated more favorably. *See Overs v. Gen. Dynamics Info. Tech.*, No. 6:11-CV-217-ORL-28, 2012 WL 1854236, at \*7 (M.D. Fla. May 21, 2012) (holding that plaintiff failed to establish *prima facie* case where she could not identify a similarly situated employee treated more favorably). A similarly situated employee must be "similarly situated in all respects." *Edmond v. Univ. of Miami*, 441 F. App'x 721, 724 (11th Cir. 2011). Plaintiff has identified five alleged comparators: Maria Kellerman, Amberlee Buckley, Jason Boddy, Allen Blackman, Josh Wallace, and Tim Bee. Pl.'s Dep.77; Pl. Dep. Ex. 54.

Plaintiff claims that PGA TOUR treated these alleged comparators more favorably by allowing them to work remotely fulltime.

Initially, Plaintiff is a Christian so to prevail she must show that PGA TOUR treated non-Christian employees outside of her protected class more favorably. *See Jaffe v. Birmingham Gastroenterology Assocs., P.C.,* No. 2:20-CV-01821-KOB, 2021 WL 4220356, at *3 (N.D. Ala. Sept. 16, 2021) ("As Jaffe [a Jewish individual] states a religious discrimination claim, it is imperative that her comparators be non-Jewish."). However, Plaintiff has no evidence showing that any of the alleged comparators were non-Christian. Pl.'s Dep. 80-83. In fact, Plaintiff admits that Ms. Kellerman was not outside her protected class as she is also a Christian. Pl.'s Dep. 79.[13] PGA TOUR has submitted undisputed record evidence that Mr. Boddy is also a Christian, and Plaintiff can identify no record evidence showing that any of the alleged comparators are non-Christian. Riceman Dec. ¶ 9, Therefore, the Court need proceed no further to dismiss Plaintiff's disparate treatment claims, because Plaintiff has failed to identify a comparator outside of her protected class. However, should the Court wish to conduct further analysis as to whether any of the alleged comparators are similarly situated with Plaintiff, PGA TOUR submits the following discussion below.

---

[13] *See, e.g., Lindsey v. Bridge Rehab, Inc.*, 369 F. Supp. 3d 1204, 1211 (N.D. Ala. 2019) (granting summary judgment where Plaintiff, a Christian, had "*not* satisfied the fourth element of her *prima facie* case because she has not identified a non-Christian whom The Bridge treated less favorably or any other circumstances from which a jury could infer discrimination."); *Brown v. Alaska Airlines, Inc.*, No. 2:22-CV-668, 2024 WL 2325058, at *9 (W.D. Wash. May 22, 2024) ("First, and critically, Plaintiff[] [has] failed to allege that *any* of the examples they offer as comparators were *outside* the claimed protected class (to wit, non-Christian or non-religious), a necessary element for relying on comparators as evidence of discriminatory intent.").

Neither Ms. Kellerman nor Ms. Buckley were similarly situated to Plaintiff for multiple reasons. First of all because both sought medical accommodations (supported by a doctor's note) providing medical support for their need to work from home—whereas Plaintiff sought a religious accommodation allowing her to work from home. Corse Dec. ¶ 19. Analysis of religious accommodations and medical accommodations are separate and distinct making them irrelevant.[14] *See Brown v. MGM Grand Casino*, No. 2:22-CV-12978, 2024 WL 4819575, at *11 (E.D. Mich. Nov. 18, 2024) (citations omitted) ("even considering the new 'substantial increased costs' test laid out in *Groff* … '[t]he ADA and Title VII ... continue to have different accommodation standards.'"); *Mumin v. City of New York*, 760 F. Supp. 3d 28, 54 (S.D.N.Y. 2024) ("If the male employees received medical accommodations, which they presumably did since Plaintiff alleges that no religious accommodation requests were granted, then they are not similarly situated to her."); *Speer v. UCOR LLC*, No. 3:22-cv-426, 2024 WL 4370773, at *13 (E.D. Tenn. Oct. 1, 2024) ("It is not disparate treatment to apply different legal standards to different types of accommodation requests.").

Beyond that obvious distinction, Ms. Kellerman also was not similarly situated to Plaintiff because she worked in a different position as an Analyst Tournament Analytics, which did not require in person collaboration in the workplace. Ms. Kellerman was also on a different team than Plaintiff, with a different supervisor, and

---

[14] Employers must evaluate requests for medical accommodations under the standards set forth in the ADA and FMLA. Contrastingly, employers must evaluate requests for religious accommodation under the completely different standards set forth in Title VII.

27

different department head who made the determination that her role could be performed remotely. Corse Dec. ¶ 19.

Ms. Buckley is not similarly situated to Plaintiff for similar reasons. Ms. Buckley also sought a medical accommodation (supported by a doctor's note) requesting work from home. Ms. Buckley also worked in a different position than Plaintiff, as a Coordinator, Corporate Partnerships, with a different supervisor. In this position, Ms. Buckley coordinated partnerships with remote third parties. Thus, she did not need to collaborate with others in the workplace. Corse Dec. ¶ 19.

Mr. Boddy is not a valid comparator because he was Plaintiff's boss, and thus not similarly situated to Plaintiff. Corse Dec. ¶ 22. *See Wallace v. Georgia Power Co.*, No. 416CV00118HLMWEJ, 2017 WL 4418670, at *11 (N.D. Ga. May 3, 2017), *report and recommendation adopted*, No. 4:16-CV-118-HLM-WEJ, 2017 WL 4422355 (N.D. Ga. June 26, 2017) (citations omitted) ("Plaintiff argues that OTL Waldrop received more favorable treatment than him. The problem with that argument is that Mr. Waldrop was plaintiff's boss. While comparators need not share the exact job title, 'material differences in ranks and responsibilities' may render any comparison impossible without 'confusing apples and oranges.'"); *Mizell v. Miami-Dade Cty.*, Fla., 342 F. Supp. 2d 1084, 1096 (S.D. Fla. 2004) (finding higher-level employee not similarly-situated to lower-level employee); *Marquez v. Costco Wholesale Corp.*, 550 F. Supp. 3d 1256, 1277 (S.D. Fla. 2021) (rejecting plaintiff's comparator in part because she "was a manager and Plaintiff's immediate supervisor; Plaintiff was an hourly employee."); *Olds v. Cracker Barrel Old Country Store, Inc.*, No. 113CV01876MHSJCF, 2015 WL 13776546,

at *8 (N.D. Ga. July 31, 2015), *report and recommendation adopted*, No. 1:13-CV-1876-MHS, 2015 WL 13776703 (N.D. Ga. Sept. 15, 2015) ("Plaintiff is a server while [her proposed comparator] is an associate manager, so Plaintiff cannot show that they had the same responsibilities and should be treated similarly in like situations.") Moreover, Mr. Boddy was also vaccinated and never sought a religious or medical accommodation allowing him to work from home, and he returned to work on November 1, 2021. Corse Dec. ¶ 22.

Alan Blackman and Josh Wallace are not similarly situated to Plaintiff because both were vaccinated, and neither sought religious or medical accommodations allowing them to work from home. Both Mr. Blackman and Mr. Wallace worked in Content Editor Digital & Social positions on Plaintiff's team in Mr. Riceman's department that was supervised by Mr. Boddy. Mr. Blackman and Mr. Wallace both returned to work on November 1, 2021 in accordance with Mr. Riceman's decision. Corse Dec. ¶ 20; Riceman Dec. ¶ 7.

Tim Bee is not similarly situated to Plaintiff because he never sought a religious or medical accommodation from the health and safety protocols. Mr. Bee was also employed as Content Editor Digital & Social on Plaintiff's team. Finally, Mr. Bee returned to work on the mandatory return to work date on November 1, 2021, while complying the health and safety protocols as he was unvaccinated. Corse Dec. ¶ 21; Riceman Dec. ¶ 7. Therefore, PGA TOUR is entitled to Summary Judgment on Plaintiff's disparate treatment claims as she cannot identify any proper comparator sufficient to establish a *prima facie* case.

**2.** **Even if Plaintiff could state a _prima facie_ case, which she cannot, her disparate treatment claims must still fail because she cannot show that PGA TOUR's legitimate, nondiscriminatory reasons for refusing to allow her to work from home were merely pretext for religious discrimination.**

Plaintiff cannot identify any record evidence demonstrating that PGA TOUR's stated reason for not allowing her to work from home full time for an indefinite period — the collaborative requirements of her position — was pretext for religious discrimination. While Plaintiff disagreed with PGA TOUR's decision to require her to return to work at PGATE, it was well within PGA TOUR's authority to make such a decision. Simply stated, Plaintiff "cannot succeed by simply quarreling with the wisdom" of PGA TOUR's decision. _See Short v. Mando Am. Corp._, 601 F. App'x 865, 874 (11th Cir. 2015) (citations omitted); _see also Chapman v. AI Transp._, 229 F.3d 1012, 1030 (11th Cir. 2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute her business judgment for that of the employer."); _Coles v. Anheuser Busch, Inc._, No. 3:05 CV 281 J 33MCR, 2006 WL 2131301, at *5 (M.D. Fla. July 28, 2006) (citations omitted) ("Reasonable people may disagree about whether an employer acted correctly or fairly, 'but such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision' on its asserted nondiscriminatory reasons."). Plaintiff has offered only evidence of her disagreement with PGA TOUR's return to work policy rather than any evidence of discriminatory intent necessary for her claim to survive.

**3.**  **Plaintiff Cannot Establish a Convincing Mosaic of Circumstantial Evidence Sufficient to Defeat PGA TOUR's Motion for Summary Judgment.**

Plaintiff also fails to plead, or present evidence of "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker" that may otherwise allow her claim to survive summary judgment, as Plaintiff admitted that she has no record evidence indicating that Mr. Riceman discriminated or retaliated against her. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); Pl. Dep. 37.

While Plaintiff raised concerns about PGA TOUR's promotion of the COVID-19 vaccine to employees (which was similarly encouraged by the CDC, OSHA, and the President of the United States at the time), vaccination status is not a protected category, and encouraging employees to become vaccinated is not an adverse employment action. *See Griffin v. Summit Properties*, No. 23-CV-493-JL-TSM, 2024 WL 1912543, at *3 (D.N.H. Apr. 17, 2024), *report and recommendation adopted*, No. 23-CV-493-JL-TSM, 2024 WL 1908434 (D.N.H. Apr. 30, 2024) (citations omitted) ("[V]accination status is not a class to which Title VII protections apply."). And though Plaintiff asserts more favorable treatment of alleged comparators with respect to remote work accommodations, two of those individuals were also Christians, and Plaintiff has no record evidence showing the other three were non-Christians and thus outside of her protected class. Pl.'s Dep. 77, 79, 81-83. Furthermore, none of the Plaintiff's alleged comparators were similarly situated as set forth above. Review of the record evidence as a whole convincingly demonstrates that there is no evidence of

a convincing mosaic of circumstantial evidence of discrimination sufficient to allow Plaintiff's claims to survive.

### C.   Plaintiff's Retaliation Claim Must Fail Because She Cannot Show a Causal Connection between Her Alleged Protected Activity and Her Termination.

In Count II, Plaintiff alleges that PGA TOUR violated Title VII by retaliating against her for seeking accommodations from the health and safety protocols by: (a) refusing to allow her to work from home full time, and (b) terminating her employment Dkt. 2 ¶¶ 89, 92.[15] To establish a *prima facie* case of retaliation, Plaintiff must show that she: (1) engaged in statutorily protected activity; (2) suffered an adverse employment action, and (3) there was some causal link between the two events. *See Lucas v. W.W. Grainger*, 257 F.3d 1249, 1260 (11th Cir. 2001). If a plaintiff establishes a *prima facie* case, the employer has an opportunity to articulate a non-retaliatory reason for its action, which the employee must rebut by identifying evidence of pretext. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181–82 (11th Cir. 2010) (citations omitted).

Plaintiff cannot establish a *prima facie* case on her denial of full time work from home claim, because PGA TOUR's refusal to allow Plaintiff to work from home full time is not an adverse employment action as a matter of law as set forth above. Plaintiff's retaliation claim also fails because she cannot show a causal relationship between her requested accommodations, and the denial of her full time work from

---

[15] Notably, Plaintiff testified that she is not claiming that PGA TOUR terminated her employment because she is a Christian. Pl. Dep. 22.

home request or her termination. [16] Even if Plaintiff could establish a *prima facie* case, which she cannot, her claim must still fail because she cannot show that PGA TOUR's legitimate non-retaliatory reasons for the denial of her work from home request, or her termination were merely a pretext for retaliation.

The decisionmaker on both the denial of Plaintiff's full time work from home request and Plaintiff's termination was Michael Riceman. Plaintiff admitted that she has no evidence showing that Mr. Riceman would discriminate against her because she is a Christian, or retaliate against her for seeking religious accommodations from the health and safety protocols. Plaintiff testified as follows:

> Q.  Have you observed anything about Michael Riceman that would lead you to believe that he would discriminate against you because you're a Christian or a Presbyterian?
> A.  No.
> ….
> Q.  Have you observed anything about [Mr. Riceman] that would lead you to believe that he would retaliate against you for requesting an accommodation or filing a charge with the EEOC or FCHR?
> A.  No.

Pl. Dep. Pgs. 37, 49-50. [17]

---

[16] Plaintiff must establish PGA TOUR's desire to retaliate was the "but-for" cause of the challenged employment action, and not simply a motivating factor. *See Univ. of Texas Sw. Med. Ctr. v Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation"). Plaintiff's Complaint does not raise the motivating factor theory with respect to any of her claims, present any evidence than any impermissible consideration was a motivating factor on any of her claims. Should Plaintiff raise this theory in her response, PGA TOUR reserves the right to more fully respond.

[17] Further, as demonstrated by the extensive email correspondence, after Plaintiff requested her accommodations, the Talent & Culture team worked tirelessly over weeks to provide reasonable accommodations to resolve her concerns so that Plaintiff could remain employed by PGA TOUR. Corse Dec. ¶¶ 15-16; Pl.'s Dep. Exs. 15, 17, 19, 23, 32, 35.

Plaintiff may seek to establish a causal connection based solely on temporal proximity because her termination was less than a month after her requests for accommodations from the health and safety protocols. Pl. Dep. Exs. 45, 52. However, in this case, the evidence of casual connection based on temporal proximity is rebutted because PGA TOUR announced the consequences of not following the safety protocols—termination—before Plaintiff engaged in protected activity by requesting accommodations. *See Nealis*, 2025 WL 807443, at *14; *Gonzalez v. City of New York*, No. 22-cv-3577, 2024 WL 1332546 at *14 (W.D.N.Y. 2024) (collecting cases which hold enforcement of a previously communicated policy is not retaliation); *Patterson*, 727 F. App'x at 589–90 (no retaliation where employer gave employee "the ultimatum" of accepting reasonable accommodations, resigning, or being terminated).

Plaintiff has no evidence that PGA TOUR's legitimate non-discriminatory reason for her termination—her repeated refusals to comply with safety protocols—was actually pretext for unlawful retaliation. *See Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 F. App'x 822, 829 (11th Cir. 2020) (affirming summary judgment for defendant where the plaintiff failed to show that the defendant's non-retaliatory reason for termination—a policy violation—was merely a pretext for retaliation). Further, Courts uniformly hold that non-compliance with employers' policies are legitimate nondiscriminatory reason for terminating an employee. *See e.g.*, *Robinson v. Colquitt EMC*, 651 F. App'x 891, 894 (11th Cir. 2016) (employees' refusal to comply with safety rules was "legitimate" and "plainly [a] non-discriminatory reason" for termination); *Owens v. Governor's Off. of Student Achievement,* 52 F.4th 1327, 1339 (11th Cir. 2022)

34

(rejecting plaintiff's claims of retaliation because plaintiff's refusal to return to office was a "legitimate, non-retaliatory" reason for termination); *Lewis v. Aaron's Sales & Lease Ownership, Inc.,* No. 8:12-CV-01005-T-27*, 2013 WL 5741780, at *7 (M.D. Fla. Oct. 22, 2013) (failure to comply with company policy is a "legitimate, non-discriminatory" reason for termination). Similarly, PGA TOUR had a legitimate, nondiscriminatory reason for denying Plaintiff's full time work from home request— the collaborative requirements of her position. And Plaintiff has no evidence of pretext. Therefore, Plaintiff's retaliation claim must be dismissed.[18]

## CONCLUSION

For the foregoing reasons, PGA TOUR respectfully requests that the Motion for Summary Judgment be granted and each of Plaintiff's claims be dismissed with prejudice.

Dated: June 27, 2025               MCGUIREWOODS LLP


                                   /s/ Thomas R. Brice
                                   Thomas R. Brice
                                   Florida Bar No. 0018139
                                   tbrice@mcguirewoods.com
                                   Cameron G. Kynes
                                   Florida Bar No. 0116711
                                   ckynes@mcguirewoods.com
                                   50 North Laura Street, Suite 3300
                                   Jacksonville, FL 32202
                                   Telephone: (904) 798-2629
                                   Facsimile:  (904) 360-6335

                                   *Counsel for PGA TOUR, Inc.*

---

[18] For the reasons discussed above, Plaintiff also cannot establish a convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation.

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to the following:

Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchenfield Rd., Ste. 2
PO Box 340
Harwinton, CT 06791
catkinson@atkinsonlawfirm.com
Rachel L.T. Rodrigues, Esq.
VIRES LAW GROUP, PLLC
515 N. Flagler Dr. Ste P300
West Palm Beach, FL 33401
rrodriguez@vireslaw.group
*Attorneys for Plaintiff*

*/s/ Thomas R. Brice*
Attorney

36